UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 99-cr-40044-JPG |
| DAVID MICHAEL SAHAKIAN, RICHARD SCOTT MCINTOSH and CARL EDGAR KNORR, | |
| Defendants. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on the government's motion for leave of Court to voluntarily dismiss Counts I and II of the Fourth Superseding Indictment pursuant to Federal Rule of Criminal Procedure 48(a) (Doc. 1997).[1]  Defendant David Michael Sahakian ("Sahakian") has responded to the motion (Docs. 2022 & 2033), as have defendants Richard Scott McIntosh ("McIntosh") and Carl Edgar Knorr ("Knorr") (Doc. 2023).  The government has replied to the responses (Doc. 2025).  Sahakian has also requested oral argument on the motion (Doc. 2024).  Because the issues are fully fleshed out in the parties' briefs and the Court can decide the issues based on those filings, the Court will deny the motion for oral argument (Doc. 2024).

**I.    The Briefing**

The government asks the Court to dismiss Counts I and II without prejudice for two basic reasons:  (1) to conserve judicial, prosecutorial and security-related resources and (2) to avoid logistical conflicts in the preparation and trial of this case, which is tentatively scheduled to begin in the fall of 2005, and the preparation and trial of *United States v. Mills*, case no. 02-CR-

---

[1]The Court has ordered that Counts I and II shall be retried in separate trials.

938-GHK, in the Central District of California. The indictment in *Mills* is more comprehensive than the indictment in this case and involves many more defendants. The *Mills* indictment charges capital offenses against Sahakian, McIntosh, Knorr and numerous others involving, in part, events also charged in this case, namely, an alleged agreement between the defendants and others to kill black inmates within the Bureau of Prisons ("BOP") and the alleged murder of BOP inmate Terry Lamar Walker. In addition, many of the government witnesses that will be used in the separate retrials of Counts I and II of this case will also be called to testify in *Mills*, in which the Court for the Central District of California plans to try small groups of defendants in multiple sequential trials. At the time the government filed its brief in this case, those trials were scheduled to begin in February 2005. The government believes that prosecuting these two overlapping cases in two distant judicial districts would be a waste of judicial, prosecutorial and security-related resources. It also notes that convictions in *Mills* would likely obviate the need to retry this case, but convictions in this case would not similarly obviate the need to try *Mills* since *Mills* involves more defendants and more comprehensive charges. Accordingly, it urges the Court to follow the lead of the Court for the Middle District of Pennsylvania in *United States v. Slocum*, case no. 4:CR-02-0196, which also charged acts included in *Mills* and which was dismissed by the government, and to dismiss Counts I and II of the Fourth Superseding Indictment without prejudice.

  The defendants oppose the government's motion. For his part, Sahakian challenges the government's good faith in its request for leave to dismiss Counts I and II. First, he argues that *Mills* will not conflict with the retrial of Counts I or II of this case. In fact, the series of *Mills* trials that were to begin in February 2005 – those of the non-capital defendants – were resolved by guilty pleas, and Sahakian believes the remainder of the trials – those of the capital

defendants – are not likely to begin before Count I of this case can be retried in the fall of 2005. Furthermore, Sahakian notes that the defendants have not even been arraigned in *Mills* and, at the time of Sahakian's response, the Department of Justice had not approved pursuit of the death penalty for any defendant in *Mills*, so the defendants' cases would not likely be ready for trial until well after retrials in this case. Sahakian also calls into question the government's representation that witnesses in this case and *Mills* overlap. Second, Sahakian argues that the government's articulated concern for conservation of resources is insincere in light of the vast sums it spent on trying this case the first time instead of deferring to the *Mills* prosecution from the outset. He speculates that the first trial in this case was simply a dress rehearsal for the trials in *Mills* or was an attempt to have two chances to impose the death penalty on Sahakian, and that such motivation constitutes harassment of the defendants in this case. He further believes the real reason the government seeks to dismiss this case is because it does not want to proceed on Counts I and II in separate trials and that dismissal without prejudice leaves the door open to successive, harassing prosecutions that could endanger Sahakian's due process rights. Finally, Sahakian distinguishes *Slocum* because it had not yet proceeded to trial before the government moved to dismiss the indictment. Alternatively, he asks the Court to dismiss Counts I and II with, not without, prejudice.

For their part, McIntosh and Knorr also question whether the government's motive for dismissing Counts I and II is to conserve resources. They argue that if a verdict is rendered on Counts I and II against them in this case, it is likely that the government cannot or would not need to try them in *Mills*. Conversely, if a *Mills* verdict comes first, the government could reinitiate this case, which would be more expensive than if it had tried it before *Mills*. McIntosh and Knorr also argue that the logistical difficulties presented by witnesses in both this case and

*Mills* and the strain on security-related resources that would be expended in two trials are not as great as the government makes them out to be. They also believe that California is not a proper venue for the trial of the charged murder of Terry Lamar Walker since the events giving rise to the charge occurred within the Southern District of Illinois and that the Interstate Agreement on Detainers, 18 App. 2 U.S.C. § 2, art. II(d), requires that Counts I and II be dismissed with prejudice if the defendants are transferred from the district prior to the trial of those charges. Finally, Knorr, who had served his federal sentence and is now a pretrial detainee, argues that it is unfair to keep him detained (and unable to resolve a pending detainer in Ohio) for the lengthy period before he can be tried in *Mills* when this case could be resolved much sooner.

**II.     The Law**

Dismissal of all or parts of an indictment at the government's request is governed by Federal Rule of Criminal Procedure 48(a), which states in pertinent part, "The government may, with leave of court, dismiss an indictment. . . ." *See In re: United States*, 345 F.3d 450, 452 (7th Cir. 2003). Rule 48(a) does not explain the criteria for when the court should grant or deny leave. It is well-established, however, that the court's discretion in deciding to deny leave is very limited. *United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2001); *In re: Richards*, 213 F.3d 773, 786 (3d Cir. 2000); *United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997). That is because the Constitution commits the authority to commence and pursue prosecutions with the Executive Branch, not the Judicial Branch, of the federal government. Const. Art. II, cl. 3 ("[The President] shall take Care that the Laws be faithfully executed. . . ."). "Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States*, 382 F.2d 479, 480

4

(D.C. Cir. 1967), *cited in In re: Richards*, 213 F.3d at 786.  This discretion means that the Executive Branch "can choose not to prosecute one case, yet prosecute vigorously another involving the same issues."  *Martin*, 287 F.3d at 623;  *see, e.g., United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975).  Where the court disagrees with a decision to prosecute or to dismiss a charge, it is generally left without any remedy.  *In re: United States*, 345 F.3d at 453-54.

Although Rule 48(a) is vague, courts agree on one situation in which it is appropriate to deny leave to dismiss without prejudice:  where the government's motive is to harass the defendant.  In fact, the principal purpose of requiring the government to obtain leave of court before dismissing a charge is "to protect a defendant from the government's harassing him by repeatedly filing charges and then dismissing them before they are adjudicated."  *Id.* at 452-53 (citing *Rinaldi v. United States*, 434 U.S. 22, 29 n. 15 (1977) (*per curiam*));  *In re: Richards*, 213 F.3d at 786;  *Palomares*, 119 F.3d at 558.  If the court believes the government is harassing the defendant, it could condition dismissal on its being with prejudice.  *In re: United States*, 345 F.3d at 453.

Some courts have also suggested that the leave requirement was also intended to protect the public interest and the integrity of the courts or to check any bad faith (other than the aforementioned harassment) on the part of the government.  *See In re: Richards*, 213 F.3d at 786-87 (collecting cases);  *see also Rinaldi*, 434 U.S. at 29 n. 15 ("[T]he Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.").  Those courts hold that a court may deny leave to dismiss charges where, for example, "the prosecutor appears motivated by bribery, animus toward the victim, or a desire to attend a social event rather than trial."  *Id.* at 787, *quoted in In re: United States*, 345 F.3d at 453.

The Seventh Circuit Court of Appeals has agreed to some extent with those courts. It held in *United States v. Palomares*, 119 F.3d 556, 558 (7th Cir. 1997), and *United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2001), that the court should exercise its discretion to assure the fair administration of justice and that a key factor in determining what is fair is the government's good faith. However, acknowledging *Martin* and *Palomares*, the Seventh Circuit Court of Appeals criticized the use of good faith and the public interest as sufficient reasons to deny leave to dismiss, noting that, with some exceptions that do not apply in this case, prosecution decisions are vested in the Executive Branch regardless of whether those decisions are in the public interest or made in good faith. *In re: United States*, 345 F.3d at 453.

While Rule 48(a) by its terms does not require the government to set forth its reasons for seeking dismissal, some courts require, or at least recommend, some sort of explanation beyond a mere conclusory statement. *See Palomares*, 119 F.3d at 558; *United States v. Dyal*, 868 F.2d 424, 428 (11th Cir. 1989); *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984); *United States v. Salinas*, 701 F.2d 41, 41 (5th Cir. 1983). Furthermore, when a court evaluates the government's proffered reasons, the government is entitled to a presumption that it acted regularly and fairly in prosecuting a case. *See United States v. Armstrong*, 517 U.S. 456, 464 (1996).

### III.     Application

In this case, the government has set forth specific, non-conclusory reasons for wanting to dismiss Counts I and II without prejudice that do not indicate that the request is motivated by harassment. This is not a case where the government has repeatedly filed charges, forced the defendants to prepare for trial, and then dismissed the charges before they have an opportunity to be adjudicated, only to reindict on the same charges later. It is true that this case and *Mills* both

involve the similar charges against the defendants involving some of the same alleged acts. However, *Mills* is much broader and has its own larger concerns that exceed those raised by this case. It cannot be said to have been brought for the purpose of harassing the defendants in this case but instead for the purpose of resolving related but more widespread alleged racketeering activities. Furthermore, the government did not wait until the eve of trial (or retrial) in this case and then seek dismissal before trying the case so that it could proceed in *Mills*. On the contrary, the government completed trial of Counts I and II in this case, only to have a mistrial declared because of a hung jury on Counts I and II. Although the government indicated immediately following the mistrial declaration that it would proceed with the retrial of this case, long before the retrial date approached and long before intense pretrial preparations began, it filed the pending motion seeking leave to dismiss. This is not harassment and will not justify denying the government leave to dismiss Counts I and II. To the extent that reprosecution by the government of the pending charges becomes harassing in the future, that matter can be raised in the appropriate court at that time.

  Even if the Court should consider the good faith of the government and the public interest, it would find that the government is acting in good faith and not contrary to the public interest. The government has explained that it wants to dismiss this case to conserve prosecution, court and security resources and to avoid pretrial preparation and trial conflicts with *Mills*. To the extent that the defendants challenge the correctness of the government's judgments about conservation of resources and about trial activities, the Court notes that it is evaluating the government's good faith in its decisions and their impact on the public interest, not whether the Court or the defendants would concur with those decisions. The government's explanations are not so incredible, farcical or frivolous as to amount to bad faith, and they support the public

interest.

With respect to the first proffered reason, conservation of resources, the Court is well-aware of the enormous costs involved in trying this case the first time. The government's choice to avoid expending additional money and resources in this case when the defendants' alleged criminal conduct would be addressed to the government's satisfaction in the more comprehensive *Mills* case appears to be a reasonable and fiscally responsible decision that does not in any way hint at acting in bad faith or contrary to the public interest. The defendants believe that the government's decision to expend large amounts of money and resources to try Counts I and II the first time belies their concern for conserving resources at this point in the case. This is not so. The government's wisdom, or lack of it, and the Court expresses no opinion on the issue, in prosecuting this case the first time has no bearing on whether its current request is in good faith or the public interest.

The government's second proffered reason, pretrial and trial conflicts with *Mills*, likewise is a legitimate basis for wanting to dismiss Counts I and II of this case. Although the government's prediction that the *Mills* cases would begin to be tried in February 2005 was not borne out, and the *Mills* trials involving the defendants in this case appear unlikely to occur in the immediate future, it is still possible that pretrial and trial activities will overlap even if the actual trials do not. The Court is not in a position to second guess the government's concerns over conflicts that might result. The Court is well-aware of the logistical difficulties involved in interviewing before trial and producing for trial the witnesses in this case. For example, the first trial of this case involved numerous witnesses incarcerated at various prisons throughout the country. Most of the incarcerated witnesses were or were alleged to be current or former members of prison gangs that were hostile to other prison gangs. Thus, the transportation of

those witnesses from their incarceration locations to the courthouse posed great logistical difficulties. It was important that members or former members of certain prison gangs not cross paths on their way to and from the courthouse both to preserve the integrity of their testimony as well as their lives. In a prison system that transports prisoners *en masse* through a central clearinghouse facility it is especially difficult to keep "separatees" separate. For this reason, to accommodate the special needs of this case, security officials had to make costly special air transportation and special housing arrangements for many of the witnesses in this case. *Mills* is sure to involve the witnesses called in this case and others, but judging from the allegations in the *Mills* indictment, they are likely to be allegedly current or former gang members who cannot cross paths with other witnesses or other members of certain gangs, even if the particular individual gang members are not witnesses in *any* case. *Mills* will pose its own logistical nightmares, and removing the need to interview and transport witnesses for this case can only make the *Mills* arrangements easier. There is no bad faith in the government's desire to reduce the difficulties in interviewing, transporting and housing witnesses by dismissing this case, and such a decision is not contrary to the public interest.

The remainder of the defendants' speculations about the governments motives for wanting to dismiss this case do not, even if true, constitute bad faith or do injustice to the public interest. Knorr's concerns about the propriety of venue in California or his continued incarceration pending completion of *Mills* are better raised in *Mills*.

### IV.   Conclusion

For the foregoing reasons, the Court **DENIES** Sahakian's motion for oral argument (Doc. 2024), **GRANTS** the government's motion for leave to voluntarily dismiss Counts I and II without prejudice (Doc. 1997) and **ORDERS** that the government shall have up to and including

June 24, 2005, to file a notice of dismissal without prejudice of Counts I and II of the Fourth Superseding Indictment in this case.

**IT IS SO ORDERED.**
**DATED:  June 8, 2005**

                                              s/ J. Phil Gilbert
                                              **J. PHIL GILBERT**
                                              **DISTRICT JUDGE**